2009-02493
FILED
July 31, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001994864

1  Mark Gorton (State Bar No. 99312) mgorton@mhalaw.com
   Stephen M. Lerner (State Bar No. 176688) slerner@mhalaw.com
2  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
3  500 Capitol Mall, 18th Floor
   Sacramento, CA  95814
4  Phone: 916.444.3900
   Fax:   916.442.2780
5

6  Attorneys for Plaintiff
   THE ONE TREE GROUP, INC.
7

8              UNITED STATES BANKRUPTCY COURT

9              EASTERN DISTRICT OF CALIFORNIA

10                 (SACRAMENTO DIVISION)

11 In Re:                              )  Case No.   09-23892
                                       )
12 TIMOTHY JOSEPH SCHMIDT and          )  Chapter 7
   JANET LOUISE RUSTICI,               )
13                                     )
                                       )
14        Debtors.                     )
   _____ )
15 THE ONE TREE GROUP, INC.            )  Adv. No.
                                       )
16        Plaintiff,                   )  **COMPLAINT OBJECTING TO**
                                       )  **DISCHARGEABILITY OF DEBT**
17   v.                                )
                                       )
18 TIMOTHY JOSEPH SCHMIDT and          )  Hon. Thomas Holman
   JANET LOUISE RUSTICI                )
19                                     )
                                       )
20        Defendants.                  )
                                       )

21      Plaintiff One Tree Group, Inc. ("Plaintiff"), on information and belief, hereby alleges as

22 follows:

23              **JURISDICTION AND GENERAL ALLEGATIONS**

24

25      1.      Jurisdiction of this Court over the instant adversary proceeding is based on 28 U.S.C.

26 sections 157 and 1334, Rule 7001(6) of the Federal Rules of Bankruptcy Procedure, and General

27 Order 182 of the United States District Court for the Eastern District of California.

28 ///

2. This proceeding relates to and arises in the Chapter 7 bankruptcy case of debtors TIMOTHY J. SCHMIDT and JANET L. RUSTICI (collectively "Defendants"), Case No. 09-23892-B-7, which is now pending in this Court, and is a "core" proceeding within the meaning of 28 U.S.C. section 157(b)(2)(I).

3. Plaintiff is, and for all relevant times was, a Nevada Corporation with its principal place of business in the State of Nevada.

4. Defendant Timothy J. Schmidt ("Schmidt") is, and for all relevant times was, a resident of the County of Butte, State of California. Plaintiff is informed and believes that Schmidt is, and for all relevant times was, the chief executive officer of Xtremestructures, Inc. ("Xtreme"), a Delaware Corporation with its principal place of business in the City of Oroville, County of Butte, State of California. Plaintiff also is informed and believes that Schmidt is, and for all relevant times was, Xtreme's sole director and shareholder. Plaintiff also is informed and believes that Schmidt is the spouse Defendant Janet L. Rustici ("Rustici").

5. Rustici is, and for all relevant times was, a resident of the County of Butte, State of California. Plaintiff is informed and believes that Rustici is, and for all relevant times was, an officer of Xtreme. Plaintiff also is informed and believes that Rustici is the spouse of Schmidt.

6. For purposes of this complaint, Schmidt and Rustici shall be referred to collectively as "Defendants" and each of the "Defendants" shall be referred to as a "Defendant."

### GENERAL ALLEGATIONS

7. Xtreme purported to manufacture high-end, energy efficient modular units for use in residential construction projects. In or about May 2007, Schmidt represented to Charles Ballantyne ("Ballantyne"), Plaintiff's president, that Xtreme was doing well financially. It had experienced increased profits from the preceding year and projected profits to increase during the following year, especially given the large number of orders for new units. Schmidt provided Ballantyne with copies of Xtreme's financial statements and revenue projections for the coming year. He also expressed a need to obtain a short-term loan to fund the construction of several new units since Xtreme would

/ / /



not receive payment for these newly constructed units until it completed construction and delivered them.

8.      On or about June 18, 2007, Plaintiff and Xtreme entered into a Promissory Note (hereinafter the "Promissory Note") wherein Plaintiff agreed to loan Xtreme $500,000.00. Xtreme agreed to repay that sum over a period of nine months. The Promissory Note contemplated an annual interest rate of 10 percent, compounded monthly.

9.      In connection with the Promissory Note, Schmidt executed a Guaranty (the "Guaranty"). In the event Xtreme failed to perform pursuant to the Promissory Note, Schmidt agreed to personally perform all terms, conditions, and obligations required of Xtreme and to otherwise satisfy all of Xtreme's obligations under the Promissory Note.

10.      Ballantyne materially and justifiably relied on the representations of Xtreme and Schmidt, including Schmidt's representation that he would guaranty Xtreme's performance under the Promissory Note, in causing Plaintiff to enter into the Promissory Note and loan Xtreme $500,000.

11.      In or around September 2007, Plaintiff agreed to reduce the principal amount of The Promissory Note to $400,000.00.[1]

12.      In or around December 2007, Xtreme paid Plaintiff $7,000.00 towards repayment of money due pursuant to the Promissory Note.

13.      In or around February 2008, Xtreme paid Plaintiff an additional $10,000.00 towards repayment of money due pursuant to the Promissory Note.

14.      Despite Plaintiff's attempts to collect the money due pursuant to the Promissory Note, Xtreme failed to pay any additional sums, other than the two payments totaling $17,000 received in or around December 2007 and February 2008.

15.      Since Xtreme breached its obligations specified in the Promissory Note, Plaintiff attempted to collect the money due from Schmidt pursuant to the Guaranty. Schmidt also failed and refused to pay any money due under the Promissory Note.

16.      On or about March 20, 2008, Xtreme filed a preemptive action for usury against Plaintiff entitled "*XtremeStructures, Inc. v. The One Tree Group, Inc.*," Case No. 2:08-CV-00621-

---

[1] For purposes of the Complaint, the facts related to this reduction are not material.



JAM-CMK, in the United States District Court for the Eastern District of California. Plaintiff filed a cross-complaint for breach of contract in the same action entitled *"The One Tree Group, Inc. v. XtremeStructures, Inc., et al."*

17. Wishing to settle the action, Plaintiff, Xtreme and Schmidt entered into a Settlement Agreement and Mutual Release (the " Agreement") on or about August 22, 2008, a true and correct copy of which is attached as **Exhibit "A"** and incorporated herein by reference. The Agreement obligated Plaintiff to dismiss its cross-complaint in exchange for certain promises by Xtreme, Schmidt and Rustici.[1] These promises included, but were not limited to:

a. Xtreme's agreement to pay Plaintiff the sum of $485,000 plus interest of ten percent per year in installments over a twelve-month period, which payments can be accelerated and converted to a judgment entered jointly and severally against Xtreme and Schmidt (the "Judgment") if Xtreme fails to cure any non-performance under the Agreement within five business days after receiving written notice;

b. Xtreme and Schmidt's agreement to permit Plaintiff to record a deed of trust against certain real property (the "Property") owned by Rustici, located in Oroville, California, and having an assessor's parcel number of 071-400-018-000 as security against the principal balance plus accrued interest owed under the Agreement; and

c. Xtreme and Schmidt's agreement to permit Plaintiff to recover its attorneys' fees and costs associated with enforcing the Judgment should Judgment be entered jointly and severally against Xtreme and Schmidt.

2. As a material inducement for entering into the Agreement, Plaintiff justifiably relied on representations made by Xtreme, Schmidt and Rustici. These representations included, but were not limited to, Xtreme and Schmidt's representation that Xtreme currently had valid, binding, and enforceable contracts with purchasers for the construction of 15 modular units when in fact it did not; Xtreme, Schmidt and Rustici's representation that the value the Property exceeded $375,000 while encumbrances against it were less than $50,000 when in fact the Property's value at the time of executing the Agreement was less than $75,000; and Xtreme, Schmidt and Rustici's representation

---

[1] Plaintiff demurred to Xtreme's complaint, which the court granted. The court dismissed Xtreme's complaint with leave to amend, which Xtreme never re-filed.



that the value of Rustici's equitable interest in the Property exceeded $325,000 when in fact it did not. To substantiate Xtreme, Schmidt and Rustici's false representations, they provided Plaintiff with spreadsheets purporting to identify the customer names, customer addresses and projected commencement and completion dates for each project.

3.     In reliance on representations by Xtreme, Schmidt and Rustici, Plaintiff executed the Agreement and dismissed its cross-complaint. Had Plaintiff known that the representations made by Xtreme, Schdmidt and Rustici were false, Plaintiff never would have entered into the Agreement as drafted. Instead, Plaintiff would have required Xtreme, Schmidt and Rustici to tender a substantial portion of the settlement amount in a single payment concurrent with their execution of the settlement instrument.

4.     By December 15, 2008, Xtreme and Schmidt had failed to perform one or more of the obligations required to be performed on their part under the Agreement. Plaintiff provided Xtreme with written notification alerting it of its failure to perform and, despite receiving this notification, Xtreme failed to cure its non-performance. Thereafter, Plaintiff caused judgment in amount of $417,034.72 to be entered jointly and severally against Xtreme and Schmidt, which judgment was entered on or about January 6, 2009.

<div align="center">

**FIRST CLAIM FOR RELIEF**
**(OBJECTION TO DISCHARGEABILITY OF DEBT)**
**(11 U.S.C. § 523(A)(2))**

</div>

5.     Plaintiff incorporates herein by reference each of the allegations of Paragraphs 1 through 20 above.

6.     Plaintiff alleges that Defendants' debt to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) in that the debt arises from money obtained by Defendants through false pretenses, false representations, and/or actual fraud respecting matters other than Defendants' financial condition.

7.     Xtreme and Schmidt fraudulently induced Plaintiff into loaning $500,000 to Xtreme by knowingly and intentionally representing that Xtreme was financially sound to repay the loan with interest within twelve months, when in fact it was not. Plaintiff is informed and believes that



1 Xtreme, Schmidt and Rustici never intended to use the borrowed funds for purposes related to

2 Xtreme, but rather intended to use these funds for personal purposes.

3     8.     Xtreme, Schmidt and Rustici fraudulently induced Plaintiff into executing the

4 Agreement and dismissing its action for breach of the Promissory Note and breach of the Guaranty

5 by knowingly and intentionally representing that Xtreme had existing orders for constructing 15

6 modular units, that it would receive payment upon completing construction and delivering each unit,

7 and that Xtreme's performance would be secured by real property valued in excess of $375,000, all

8 of which were in fact false. Plaintiff is informed and believes that Xtreme, Schmidt and Rustici

9 never intended to perform under the Agreement, but rather intended to delay or deter Plaintiff from

10 seeking entry of judgment so that they could place their assets beyond Plaintiff's reach.

11     9.     Plaintiff is informed and believes that Schmidt and Rustici have created false records

12 and secretly manipulated Xtreme's bank accounts and accounting records to advance their fraudulent

13 activities in hopes of escaping responsibility under the Promissory Note, Guaranty, Agreement, and

14 the deed of trust recorded against the Property. Plaintiff further is informed and believes that

15 Xtreme, Schmidt and Rustici all along intended to defraud Plaintiff.

16     10.     As a proximate result of Xtreme, Schmidt and Rustici's fraudulent conduct, Plaintiff

17 has sustained economic damage in amounts not exactly known as of the date of this Complaint.

18     11.     Xtreme, Schmidt and Rustici's representations were made and activities were

19 undertaken with the intent to defraud, with malice, and in conscious disregard of Plaintiff's rights,

20 thereby entitling Plaintiff to recover punitive damages in this action.

21     Wherefore, Plaintiff prays judgment as set forth below.

22 <div align="center">**PRAYER FOR RELIEF**</div>

23 1.     For a determination that Defendants' debts to Plaintiff are nondischargeable pursuant to

24     11 U.S.C. § 523(a)(2);

25 2.     That the Court enter a money judgment against Defendants for all amounts owed by

26     Defendants to Plaintiff from and/or related to Defendants' conduct, according to proof;

27 3.     For reimbursement of reasonable attorneys' fees and litigation expenses according to

28     proof;



1    4.     For costs of suit herein incurred; and

2    5.     for such other and further relief as the Court may deem just and proper.

3    DATED: July 31, 2009

4                                           McDONOUGH HOLLAND & ALLEN PC
                                            Attorneys at Law
5

6

7                                           By:  _____/s/ Stephen M. Lerner_____
                                                 STEPHEN M. LERNER
8
                                            Attorneys for Plaintiff THE ONE TREE GROUP,
9                                           INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MHA
mcDonough Holland & Allen PC
Attorneys at Law

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

The parties to this Settlement Agreement and Mutual Release ("Agreement") are Plaintiff-Cross-Defendant XtremeStructures, Inc. ("Xtreme"), Cross-Defendant Timothy J. Schmidt ("Schmidt"), and Defendant-Cross-Complainant The One Tree Group, Inc. ("OTG") This Agreement is effective August 2*, 2008.

### RECITALS

A.    Currently pending in the United States District Court for the Eastern District of California is the action entitled *XtremeStructures, Inc. v. The One Tree Group, Inc.*, No. 2:08-CV-00621-JAM CMK (the "Litigation").

B.    The parties wish to settle the Litigation and all other claims that each party has or could have asserted in the Litigation, under the terms and conditions set forth below.

### AGREEMENT

In consideration of the mutual promises set forth below, the parties agree as follows:

1.    **Payment, Representations, Acceleration, and Judgment.** As consideration for this Agreement, Xtreme shall pay the sum of $485,000 in the form of checks made payable to the McDonough Holland and Allen Client PC Client Trust Account and delivered via overnight delivery to OTG care of Stephen M. Lerner, McDonough Holland & Allen PC, 555 Capitol Mall, Suite 900, Sacramento, California 95814 or to such other address that OTG may designate in writing under the following payment schedule:

(a)    Xtreme shall deliver a check in the amount of $45,000 concurrent with execution of this Settlement Agreement and Mutual Release; and thereafter,

(b)    Xtreme shall deliver subsequent payments of $25,000 within four business days following the date that Xtreme delivers or causes to be delivered a completed module/structure. Xtreme represents and warrants that it currently has valid, binding, and enforceable contracts with purchasers for the construction of 15 modules/structures, each module/structure takes approximately 30 days to construct, it anticipates completing construction of approximately two modules/structures per month, and its contracts require its purchasers to make final payment within two business days of the date that Xtreme delivers or causes to be delivered a completed module/structure. In the event that Xtreme does not receive payment from a customer within two business days following the date that it delivered or caused to be delivered the completed module/structure, Xtreme shall pay OTG $10,000 on the fourth business day following the date that it delivered or caused to be delivered the completed module/structure and $15,000 within two business days following the date that it receives payment for that module/structure from its customer, but in no event later than 60 calendar days from the date that it delivered or caused to be delivered the completed module/structure.

(c)    Provided payments are made in accordance with the payment schedule set forth herein and deliverables are produced in accordance with Paragraph Nos. 2 and 3

382192/2/LIB/103925-0003

## 00008

### Exhibit A

below, OTG shall refrain from causing judgment to be entered in the Litigation against Xtreme and Schmidt. In the event that Xtreme fails to make any one or more payments as set forth above or fails to produce any deliverable required to be produced pursuant to Paragraph Nos. 2 and 3 below, OTG may cause judgment to be entered in favor of OTG and jointly and severally against Xtreme and/or Schmidt in the Litigation in the total amount of $485,000 less any payments made by Xtreme pursuant to the schedule set forth herein (the "Principal Balance"), provided that Xtreme and Schmidt have failed to cure any non-performance within five calendar days, inclusive of holidays and weekends, of receiving written notice of default from OTG, which OTG shall send via overnight delivery to XtremeStructures, Inc., 4801 Feather River Blvd., Suite 17, Oroville, California 95965-9692. Interest of ten percent (10%) per year shall accrue on the Principal Balance beginning on the date that judgment is entered. Irrespective of the payment schedule set forth herein, Xtreme shall pay the Principal Balance in full within 12 months of the date that it executes this Agreement.

(d)     There is no penalty for payments received earlier than the specified deadline.

2.     **Deed of Trust.** Xtreme and Schmidt shall permit OTG to record a deed of trust ("Deed of Trust"), in a form substantially similar to the document attached hereto as Exhibit 1, against that certain 20 +/- acre property (the "Property") located in Oroville, California and having an assessor's parcel number of 071-400-018-000 as security against the Principal Balance plus accrued interest, if any. Upon the payment of the Principal Balance plus accrued interest, if any, OTG shall deliver to the trustee of the Deed of Trust ("Trustee") a written request for release and reconveyance, and will surrender to Trustee for cancellation the Deed of Trust and any instrument evidencing the obligations evidenced by this Agreement. On Trustee's receipt of the written request by OTG, Trustee shall release and reconvey the Property or that portion then held to the person legally entitled.

3.     **Deliverables by Xtreme.** Within five business days after execution of this Agreement, Xtreme shall provide OTG at the address listed in Paragraph No. 1 above with a list identifying the project number, customer name, customer address, and projected construction commencement and completion dates of each module/structure covered by the fifteen valid, binding and enforceable contracts that Xtreme currently has with its customers. Beginning on September 15, 2008 and continuing until the Principal Balance is paid in full, Xtreme shall also provide OTG at the address listed in Paragraph No. 1 above with status reports on the 15th of each month describing the progress of construction on each of the fifteen modules/structures and, upon delivering or causing to be delivered the module/structure, Xtreme shall also provide OTG with copies of the permit or permits issued by the California Department of Housing and Community Development. OTG shall retain the names and addresses of Xtreme's customers as confidential and shall not approach any customer for payment of Xtreme's obligation due and owing to OTG unless the Court has entered judgment against Xtreme. A breach of this confidentiality term shall be deemed a material breach by OTG and shall entitle Xtreme to assert all rights it may have in law or equity, but shall not suspend Xtreme's obligations set forth herein.

4.     **Stay of Proceedings and Dismissal with Prejudice.** Xtreme, Schmidt and OTG hereby agree to file a joint motion to stay the Litigation for the period of time necessary for

Xtreme to perform as set forth herein. If full performance is made according to terms and conditions herein, the Parties will file a Stipulation of Dismissal with Prejudice, a copy of which is attached hereto as Exhibit 2.

5. **Cancellation of Promissory Note and Guaranty.** If full payment is made according to the payment schedule outlined in Paragraph No. 1 herein, then the Promissory Note dated June 18, 2007 in the principal amount of $500,000, with a nine month term, by borrower XtremeStructures, Inc. (the "Note"), and the Guaranty dated June 18, 2007 by Timothy J. Schmidt (the "Guaranty") will be cancelled, and Xtreme and Schmidt shall be fully released and discharged from any obligations under the Note and the Guaranty.

6. **Release by OTG.** Provided that full payment under Paragraph 1 herein is received by OTG according to the terms of this Agreement, in consideration of the benefits provided in this Agreement, OTG forever releases and discharges Xtreme and Schmidt, and their directors, officers, agents, employees, attorneys, insurers, related corporations, successors, heirs and assigns, from any and all liability, damages, attorney fees, costs, or causes of action, whether known or unknown, whether in tort, contract, or under state or federal statute arising out of or relating to the Litigation, the Note, and/or the Guaranty.

7. **Release by Xtreme and Schmidt.** Provided that full payment under Paragraph 1 herein is received by OTG according to the terms of this Agreement, in consideration of the benefits provided in this Agreement, Xtreme and Schmidt forever release and discharge OTG, and its directors, officers, agents, employees, attorneys, insurers, related corporations, successors, heirs and assigns, from any and all liability, damages, attorney fees, costs, or causes of action, whether known or unknown, whether in tort, contract, or under state or federal statute arising out of or relating to the Litigation, the Note, and/or the Guaranty.

8. **Civil Code 1542.** With respect to the waiver and release set forth in Sections 6 and 7 above, the Parties expressly waive and relinquish all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, or by any comparable state or federal statute, and do so understanding and acknowledging the significance and consequences of such specific waiver of Section 1542. Section 1542 of the Civil Code of the State of California states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

9. **Attorneys' Fees and Costs.** OTG, Xtreme and Schmidt shall each bear his, her or its attorneys' fees and costs associated with prosecuting and/or defending the Litigation. However, should OTG cause judgment to be entered, OTG shall be entitled to recover its attorneys' fees and costs incurred in enforcing said judgment against Xtreme and Schmidt.

10. **No Admission of Liability.** The parties agree that nothing in this Agreement, its contents, and any payments made under it, shall be construed as an admission of liability on the part of any other party.

11. **Governing Law and Jurisdiction.** This Agreement shall be interpreted and enforced in accordance with the laws of the State of California. OTG, Xtreme and Schmidt

agree that the United States District Court, Eastern District of California, shall retain jurisdiction of the Litigation to enter judgment against Xtreme and Schmidt in the event that Xtreme defaults in performing any one or more of its obligations set forth herein.

12. **Successors and Assigns.** This Agreement shall be binding upon and may be enforced by the parties and their respective successors, assigns, heirs, executors, administrators and other legal representatives.

13. **Severability.** The provisions of this Agreement are severable. If any term or provision of this Agreement or its application is held invalid, the invalidity shall not affect other terms, obligations, provisions, or applications of this Agreement which can be given effect without the invalid terms, obligations, provisions, or applications.

14. **Waiver.** The failure of either party to demand strict performance of any provision of this Agreement shall not constitute a waiver of any provision, term, covenant, or condition of this agreement or of the right to demand strict performance in the future.

15. **Section Headings.** The section headings contained herein are for reference purposes only and will not in any way affect the meaning or interpretation of this Agreement.

16. **Entire Agreement.** Except as otherwise provided in this section, this Agreement constitutes the entire agreement between the parties and supersedes all prior or contemporaneous oral or written understandings, statements, representations or promises with respect to its subject matter. This Agreement was the subject of negotiation between the parties and, therefore, the parties agree that the rule of construction requiring that the agreement be construed against the drafter shall not apply to the interpretation of this Agreement.

17. **Voluntary Execution.** The parties represent that they fully understand the terms of this Agreement and voluntarily agree to its terms for the purpose of making a full compromise and settlement of any claims which the parties may have against each other, as well as the persons and corporations covered by this Agreement, arising out of or relating to the Litigation. The parties further represent that they have had an opportunity to consult with counsel prior to signing this Agreement, and they are not relying on any statements or representations other than those set forth in this Agreement.

18. **Counterparts and Facsimile Signatures.** This Agreement is not effective until it is signed by all parties. The Agreement may be signed in counterparts and the signatures may

be transmitted electronically or by facsimile which shall be as effective and binding as original signatures.

THE ONE TREE GROUP, INC.

By: _____
Charles Ballantyne, President

Dated: _August 21, 2008_

XTREME STRUCTURES, INC.

By: _____
Timothy Schmidt, President

Dated: _____

TIMOTHY SCHMIDT, an individual

_____
Timothy Schmidt

Dated: _____

APPROVED AS TO FORM:

McDonough Holland & Allen PC
Attorneys at Law

By: _____
Stephen M. Lerner (SBN 176688)
Attorneys for The One Tree Group, Inc.

ATER WYNNE LLP

By: _____
Lori Irish Bauman
(State Bar of California No. 116990)
Attorneys for XtremeStructures, Inc.
and Timothy Schmidt

Page 5 – SETTLEMENT AGREEMENT AND MUTUAL RELEASE        382192/2/LIB/103925-0003

000.12

be transmitted electronically or by facsimile which shall be as effective and binding as original signatures.

| **THE ONE TREE GROUP, INC.** | **XTREME STRUCTURES, INC.** |
|---|---|

By:_____
    Charles Ballantyne, President

By:_____
    Timothy Schmidt, President

Dated:_____

Dated: _08/22/08_____

**TIMOTHY SCHMIDT, an individual**

_____
Timothy Schmidt

Dated: _08/22/08_____

**APPROVED AS TO FORM:**

McDonough Holland & Allen PC
Attorneys at Law

ATER WYNNE LLP

By:_____
    Stephen M. Lerner (SBN 176688)
    Attorneys for The One Tree Group, Inc.

By:_____
    Lori Irish Bauman
    (State Bar of California No. 116990)
    Attorneys for XtremeStructures, Inc.
    and Timothy Schmidt

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

McDonough Holland & Allen PC,
555 Capitol Mall, Suite 900,
Sacramento, California 95814

# DEED OF TRUST

This DEED OF TRUST, made _8/26/08_ , between **JANET L. RUSTICI**, herein called TRUSTOR, whose address is 2485 Notre Dame Blvd., Suite 370 D, Chico, CA 95928

**CHICAGO TITLE COMPANY,** a California Corporation, herein called TRUSTEE, and

**THE ONE TREE GROUP, INC.,** herein called BENEFICIARY,

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale that property in Butte County, California, described on Exhibit "A" attached hereto and incorporated herein by this reference.

For the Purpose of Securing payment of the sum of Four Hundred Eighty-Five Thousand Dollars ($485,000) pursuant to and in accordance with the terms and conditions of that certain Settlement Agreement and Mutual Release of even date herewith between XtremeStructures, Inc., Timothy J. Schmidt, and Beneficiary, and extensions or renewals thereof.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of Trust

recorded in the book and page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|--------|------|------|--------|------|------|--------|------|------|--------|------|------|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties) are preprinted on the following pages hereof and are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

*Janet L. Rustici*

JANET L. RUSTICI

CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF CALIFORNIA, )
　　　　　　　　　　　　)
COUNTY OF Butte )

　　　　On August 26, 2008 before me, Matthew Richard Torst, Notary Public (here insert name and title of the officer), personally appeared Janet L. Rustici _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

MATTHEW RICHARD TORST
COMM. #1755123
NOTARY PUBLIC - CALIFORNIA
BUTTE COUNTY
COMM. EXPIRES JULY 3, 2011


## CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF CALIFORNIA, )
　　　　　　　　　　　　)
COUNTY OF　　　　　　 )

　　　　On _____ before me, _____, (here insert name and title of the officer), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Exhibit 1 to Settlement
Agreement and Mutual Release,
Pg. 3 of 9

00018

# EXHIBIT "A"

## DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF BUTTE, AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

PARCEL 1, AS SHOWN ON THAT CERTAIN PARCEL MAP, RECORDED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF BUTTE, STATE OF CALIFORNIA, ON DECEMBER 20, 1979, IN BOOK 75 OF MAPS, AT PAGE(S) 41.

AP#: 071-400-018-000

PARCEL II:

A NON-EXCLUSIVE EASEMENT FOR ROAD AND PUBLIC UTILITY PURPOSES, AS SHOWN ON THAT CERTAIN PARCEL MAP, RECORDED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF BUTTE, STATE OF CALIFORNIA, ON NOVEMBER 4, 1977, IN BOOK 63 OF MAPS, AT PAGE(S) 7.

EXCEPTING THEREFROM ALL THAT PORTION LYING WITHIN THE BOUNDS OF PARCEL I, DESCRIBED HEREIN.

PARCEL III:

A PERMANENT NON-EXCLUSIVE EASEMENT FOR ROAD AND PUBLIC UTILITY PURPOSES, BEING A STRIP OF LAND 60 FEET IN WIDTH, SAID STRIP LYING 30 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING AT A POINT ON THE EAST LINE OF SECTION 20, TOWNSHIP 20 NORTH, RANGE 5 EAST, M.D.B. & M., FROM WHICH THE SOUTHEAST CORNER OF SAID SECTION 20 BEARS SOUTH 00 DEG. 52' 46" EAST, 1,065.33 FEET, SAID POINT ALSO BEING THE POINT OF COMMENCEMENT, AS DESCRIBED IN THAT CERTAIN DEED DATED APRIL 20, 1965, AND RECORDED APRIL 22, 1965, IN BOOK 1369, PAGE 546, OFFICIAL RECORDS; THENCE FROM SAID POINT OF BEGINNING, LEAVING SAID EAST LINE, ALONG THE CENTERLINE AS DESCRIBED IN SAID DEED NORTH 75 DEG. 08' 40" WEST, 208.98 FEET; THENCE SOUTH 68 DEG. 01' 00" WEST, 203.53 FEET; THENCE SOUTH 53 DEG. 19' 30" WEST, 110.29 FEET; THENCE SOUTH 38 DEG. 27' 00" WEST, 141.91 FEET; THENCE LEAVING SAID DEED CENTERLINE SOUTH 12 DEG. 22' 15" EAST, 72.81 FEET; THENCE SOUTH 25 DEG. 09' 58" EAST, 133.49 FEET; THENCE SOUTH 07 DEG. 00' 38" EAST, 196.85 FEET; THENCE SOUTH 89 DEG. 03' 28" WEST, 239.11 FEET; THENCE SOUTH 47 DEG. 17' 35" WEST, 270.64 FEET; THENCE SOUTH 12 DEG 48' 15" WEST, 325.19 FEET; THENCE NORTH 72 DEG. 53' 45" WEST, 193.35 FEET; THENCE SOUTH 27 DEG 44' 05" WEST, 173.71 FEET; THENCE SOUTH 05 DEG. 47' 01" WEST, 164.14 FEET; THENCE SOUTH 85 DEG. 43' 55" WEST 216.81 FEET; THENCE SOUTH 27 DEG. 02' 45" WEST, 100.38 FEET; THENCE SOUTH 31 DEG. 03' 24" EAST, 270.18 FEET; THENCE SOUTH 06 DEG. 11' 15" EAST, 123.26 FEET; THENCE SOUTH 62 DEG. 02' 03" WEST, 205.31 FEET; THENCE SOUTH 38 DEG. 55' 53" WEST, 150.35 FEET; THENCE SOUTH 13 DEG. 05'

CONTINUED

Exhibit 1 to Settlement Agreement and Mutual Release, Pg. 4 of 9

PARCEL III: CONTINUED

16" EAST, 121.46 FEET; THENCE SOUTH 57 DEG. 50' 40" EAST, 240.90 FEET; THENCE SOUTH 68 DEG. 21' 16" EAST, 186.10 FEET; THENCE NORTH 84 DEG. 03' 10" EAST, 118.56 FEET; THENCE SOUTH 22 DEG. 30' 31" EAST, 137.37 FEET; THENCE SOUTH 25 DEG. 44' 47" WEST, 386.61 FEET; THENCE SOUTH 45 DEG. 14' 51" EAST, 145.03 FEET; THENCE SOUTH 71 DEG. 49' 54" EAST, 128.47 FEET; THENCE NORTH 88 DEG. 15' 14" EAST, 131.33 FEET; THENCE SOUTH 44 DEG. 33' 43" EAST, 133.40 FEET; THENCE SOUTH 49 DEG. 39' 07" WEST, 260.43 FEET; THENCE SOUTH 88 DEG. 12' 44" WEST, 200.66 FEET; THENCE NORTH 73 DEG. 21' 32" WEST, 142.00 FEET; THENCE NORTH 80 DEG. 06' 43" WEST, 335.18 FEET TO A POINT FROM WHICH THE SOUTHEAST CORNER OF SAID SECTION 20 BEARS NORTH 39 DEG. 12' 06" EAST, 2,644.84 FEET SAID POINT BEING THE END OF THE HEREIN DESCRIBED CENTERLINE.

EXCEPTING THEREFROM ANY PORTION OF SAID ROAD LYING WITHIN THOSE CERTAIN PARCELS OF LAND CONVEYED IN DEED FROM PEARL E. SIMMONS, A WIDOW, TO THE STATE OF CALIFORNIA, IN DEED DATED NOVEMBER 6, 1962, AND RECORDED MARCH 8, 1963, IN BOOK 1231, PAGE 548, OFFICIAL RECORDS.

BEARINGS AND DISTANCES IN THE ABOVE DESCRIBED CENTERLINE ARE BASED ON THE CALIFORNIA COORDINATE SYSTEM ZONE II, AND THE ZONE II COORDINATES FOR SAID POINT OF BEGINNING ARE Y=694,628.22 AND X=2,161,621.50.

Exhibit 1 to Settlement
Agreement and Mutual Release,
Pg. 5 of 9

00018

DO NOT RECORD

The following is a copy of Subdivisions A and B of the fictitious Deed of
Trust recorded in each County in California as stated in the foregoing Deed
of Trust and incorporated by reference in said Deed of Trust as being a
part thereof as if set forth at length therein.

A. To protect the security of this Deed of Trust, Trustor agrees:
(1) To keep said property in good condition and repair; not to remove or
demolish any building thereon; to complete or restore promptly and in good
and workmanlike manner any building which may be constructed, damaged or
destroyed thereon and to pay when due all claims for labor performed and
materials furnished therefor; to comply with all laws affecting said
property or requiring any alterations or improvements to be made thereon;
not to commit or permit waste thereof; not to commit, suffer, or permit any
act upon said property in violation of law; to cultivate, irrigate,
fertilize, fumigate, prune and do all other acts which from the character
or use of said property may be reasonably necessary, the specific
enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance
satisfactory to and with loss payable to Beneficiary.  The amount collected
under any fire or other insurance policy may be applied by Beneficiary upon
any indebtedness secured hereby and in such order as Beneficiary may
determine, or at option of Beneficiary the entire amount so collected or
any part thereof may be released to Trustor.  Such application or release
shall not cure or waive any default or notice of default hereunder or
invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect
the security hereof or the rights or powers of Beneficiary or Trustee; and
to pay all costs and expenses, including cost of evidence of title and
attorney's fees in a reasonable sum, in any action or proceeding in which
Beneficiary or Trustee may appear, and in any suit brought by Beneficiary
to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments
affecting said property, including assessments on appurtenant water stock;
when due, all encumbrances, charges and liens, with interest, on said
property or any part thereof, which appear to be prior or superior hereto;
all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein
provided, then Beneficiary or Trustee, but without obligation so to do and
without notice to or demand upon Trustor and without releasing Trustor from
any obligation hereof, may, make or do the same in such manner and to such
extent as either may deem necessary to protect the security hereof,
Beneficiary or Trustee being authorized to enter upon said property for
such purposes; appear in and defend any action or proceeding purporting to
affect the security hereof or the rights or powers of Beneficiary or
Trustee; pay, purchase, contest or compromise any encumbrance, charge, or
lien which in the judgement of either appears to be prior or superior

Exhibit 1 to Settlement
Agreement and Mutual Release,
Pg. 6 of 9

00019

hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

(5)   To pay immediately and without demand all sums so expanded by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:

(1)   That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him or her in the same manner and with the same effect as above provided for regarding disposition of proceeds of fire or other insurance.

(2)   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his or her right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)   That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5)   That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his or her own name sue for or otherwise

Exhibit 1 to Settlement
Agreement and Mutual Release,
Pg. 7 of 9

collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property , the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)  That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall Cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of ·sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds· of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

Exhibit 1 to Settlement
Agreement and Mutual Release,
Pg. 8 of 9

00021

(8)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns.  The term Beneficiary shall mean the owner and holder, including pledgees of the note secured hereby, whether or not named as Beneficiary herein.  In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

(9)  The Trustee accepts this Trust when this Deed, duty executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

*DO NOT RECORD*                          REQUEST FOR FULL RECONVEYANCE

TO CHICAGO TITLE COMPANY

The undersigned is the legal owner and holder of the note or notes and of all other indebtedness secured by the foregoing Deed of Trust.  Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidence of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated

Please mail Deed of Trust,
Note and Reconveyance to _____

*Do not lose or destroy this Dead of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.*

Exhibit 1 to Settlement
Agreement and Mutual Release,
Pg. 9 of 9

00022

1  Lori Irish Bauman, California State Bar No. 116990
   lib@aterwynne.com
2  Matthew E. Hedberg, California State Bar No. 224907
   meh@aterwynne.com
3  ATER WYNNE LLP
   222 SW Columbia, Suite 1800
4  Portland, OR 97201
   Tel:    503-226-1191
5  Fax:    503-226-0079

6
   California Office:
7  Suite 126
   3723 Haven Avenue
8  Menlo Park, CA 94025-1011

9  Attorneys for XtremeStructures, Inc.

10              UNITED STATES DISTRICT COURT

11        EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)

12

13 XTREMESTRUCTURES, INC., a Delaware        Case No. **2:08-CV-00621 JAM CMK**
   corporation,
14                                            **STIPULATION OF DISMISSAL WITH**
                Plaintiff,                    **PREJUDICE**
15
         v.
16
   THE ONE TREE GROUP, INC., a Nevada
17 corporation,

18              Defendant.

19 _____

20 THE ONE TREE GROUP, INC., a Nevada
   corporation,
21
                Cross-Complainant,
22
         v.
23
   XTREMESTRUCTURES, INC., a Delaware
24 corporation; TIMOTHY J. SCHMIDT; and
   DOES 1 – 50,
25
                Cross-Defendants.
26

Page 1 - **STIPULATION OF DISMISSAL WITH PREJUDICE**

Exhibit 2 to Settlement
Agreement and Mutual Release,
Pg. 1 of 3

Pursuant to Fed. R. Civ. P. 41(a)(1), all parties to this action stipulate that this action, including all claims and cross-claims, shall be dismissed with prejudice, with each party to bear its own costs, expenses, and attorney fees.

DATED this ____ day of _____.

ATER WYNNE LLP                         MCDONALD HOLLAND & ALLEN PC

By:_____          By:_____
   Lori Irish Bauman                          Stephen M. Lerner
   California State Bar No. 116990             California State Bar No. 176688
   Attorneys for Plaintiff/Cross-Defendant     Defendant/Cross-Complainant
   XtremeStructures, Inc. and                  The One Tree Group, Inc.
   Cross-Defendant Timothy J. Schmitt

Page 2 - **STIPULATION OF DISMISSAL WITH PREJUDICE**

Exhibit 2 to Settlement
Agreement and Mutual Release,
Pg. 2 of 3

00024

<div style="margin-left: 2em;">

1

2     <div style="text-align: center;">**PROOF OF SERVICE**</div>

    I hereby certify that I have this _____ day of August, 2008, served a true and correct
copy of the foregoing document upon the following, via the methods noted below, properly

3     addressed as follows:

4
        Stephen M. Lerner                        ☐ Hand Delivered
5       Jamie M. Errecard                        ☒ U.S. Mail
        McDonough Holland & Allen PC                (Certified Mail, Return Receipt Requested)
6       555 Capitol Mall, 9th Floor              ☐ Overnight Mail (UPS)
        Sacramento, CA  95814                    ☐ Facsimile

7
    I declare under penalty of perjury under the laws of the State of California that the
8     foregoing is true and correct.

9         DATED this _____ day of _____, 2008, at Portland, Oregon.

10
        /s/ LORI IRISH BAUMAN
11      Lori Irish Bauman

12      Attorneys for Plaintiff and Cross-Defendants
        XtremeStructures, Inc. and Timothy J. Schmidt

13

14

15

16

17

18

19

20

21

22

23

24

25

26

</div>

382238/1/LIB/103925-0003

**CERTIFICATE OF SERVICE**

Exhibit 2 to Settlement
Agreement and Mutual Release,
Pg. 3 of 3

00025

# XtremeStructures Project List

| Project Name | Contract Price | Project # | Owner | Address | Proj. Commencement | Proj. Completion Date |
|---|---|---|---|---|---|---|
| Duck Club | $884,705.00 | 108010004 Lou Ratto | | 1417 McDonald Ave., Santa Rosa, CA 95404 | Aug-08 | Sep-08 |
| Helprin | $185,822.00 | 108050001 Alchemy, LLC | | 856 Raymond Avenue, St. Paul, MN 55114 | Aug-08 | Oct-08 |
| Myers | $149,329.00 | 107110006 LuAnne Myers | | 310 Madison Ave., Pomona, CA 91767 | Aug-08 | Sep-08 |
| Oak Guest House | $57,600.00 | 108040001 Mission Oaks Development LLC | | 3001 Bridgeway Blvd., Sausalito, CA 94965 | Sep-08 | Oct-08 |
| Oak Main House | $187,200.00 | 108040001 Mission Oaks Development LLC | | 3001 Bridgeway Blvd., Sausalito, CA 94965 | Sep-08 | Oct-08 |
| Toler Estates – Lot # 1 | $216,650.00 | 108030001 Custom Design & Build | | 2206 Shannon Dr., S. San Francisco, CA 94080 | Oct-08 | Nov-08 |
| Toler Estates – Lot # 2 | $216,650.00 | 108030002 Custom Design & Build | | 2207 Shannon Dr., S. San Francisco, CA 94080 | Oct-08 | Nov-08 |
| Toler Estates – Lot # 3 | $216,650.00 | 108030003 Custom Design & Build | | 2208 Shannon Dr., S. San Francisco, CA 94080 | Nov-08 | Dec-08 |
| Toler Estates – Lot # 4 | $216,650.00 | 108030004 Custom Design & Build | | 2209 Shannon Dr., S. San Francisco, CA 94080 | Nov-08 | Dec-08 |
| Toler Estates – Lot # 5 | $216,650.00 | 108030005 Custom Design & Build | | 2210 Shannon Dr., S. San Francisco, CA 94080 | Dec-08 | Jan-09 |
| Toler Estates – Lot # 6 | $216,650.00 | 108030006 Custom Design & Build | | 2211 Shannon Dr., S. San Francisco, CA 94080 | Dec-08 | Jan-09 |
| Barry Residence | $611,000.00 | 107110008 Michael Barry | | 224 Fairway Drive, Danville, CA 94526 | Dec-08 | Jan-09 |
| Taft Estates – Lot # 1 | $351,750.00 | 107110009 Custom Design & Build | | 2211 Shannon Dr., S. San Francisco, CA 94080 | Jan-08 | Feb-09 |
| Taft Estates – Lot # 2 | $351,750.00 | 107110010 Custom Design & Build | | 2212 Shannon Dr., S. San Francisco, CA 94080 | Jan-08 | Feb-09 |
| Taft Estates – Lot # 3 | $351,750.00 | 107110011 Custom Design & Build | | 2213 Shannon Dr., S. San Francisco, CA 94080 | Feb-09 | Mar-09 |

*August 26, 2008*